# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0642, <u>Timothy Goumas v. Gayle Washington</u>, the court on October 10, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff, Timothy Goumas, appeals a small claim judgment entered by the Circuit Court (<u>Murray</u>, J.), following an evidentiary hearing, denying his claim for breach of contract against the defendant, Gayle Washington, and awarding the defendant $5,333.33 plus costs on her counterclaim for breach of contract. We construe the plaintiff's brief to argue, in part, that the trial court erred by not finding that the defendant altered the parties' written contract after executing it, by determining that the contract provided for the defendant's payment of a flat fee for the plaintiff's services, and by finding that the defendant did not breach the contract, but that the plaintiff did materially breach it. The defendant cross-appeals the trial court's denial of her motion for attorney's fees, arguing that the trial court erred by not enforcing an attorney's fee provision in the parties' contract. We affirm the judgment entered in favor of the defendant on the plaintiff's claim and the defendant's counterclaim, reverse the denial of the defendant's motion for attorney's fees, and remand for the trial court to determine and award the amount of reasonable fees that the defendant incurred in the trial court.

We first address the plaintiff's arguments that the trial court erred by not finding that the defendant altered the terms of the parties' contract, and by determining that the contract provided for the defendant's payment of a flat fee, and that the plaintiff, and not the defendant, materially breached the contract. Whether a party has materially breached a contract is a question of fact for the trial court to resolve. <u>See</u> <u>Fitz v. Coutinho</u>, 136 N.H. 721, 725 (1993). Likewise, "[w]hen there is a disputed question of fact as to the existence and terms of a contract, [the question] is to be determined by the trier of fact." <u>Syncom Indus. v. Wood</u>, 155 N.H. 73, 83 (2007). We will uphold the trial court's findings and conclusions unless they are lacking in evidentiary support or are tainted by error of law. <u>Id</u>. We defer to the trial court's judgment on issues such as resolving conflicts in testimony, evaluating the credibility of witnesses, and determining the weight to be given to the evidence presented, mindful that the trial court is not compelled to believe even uncontested evidence. <u>See</u> <u>Gaucher v. Waterhouse</u>, 175 N.H. 291, 296 (2022); <u>Loon Valley Homeowner's Ass'n v. Pollock</u>, 171 N.H. 75, 78 (2018). "We do not decide whether we would have ruled differently than the trial court, but, rather,

whether a reasonable person could have reached the same decision based upon the same evidence." Gaucher, 175 N.H. at 295-96.

The parties in this case entered into a contract requiring the plaintiff to find three candidates to fill three employment positions at the defendant's business. At trial, both parties introduced a copy of what each party represented to be the written contract, drafted by the plaintiff, that the defendant executed. The documents were largely identical. However, the version introduced by the plaintiff contained language, represented in the quotation of the relevant provision below in bolded font, that was not contained in the otherwise identical provision in the version introduced by the defendant:

> 2.    Retainer. The [defendant] agrees to pay the [plaintiff] $16,000 to perform the Services. The [plaintiff] will invoice the [plaintiff] on the first day of every month for the Services performed and all pre-approved expenses incurred during the previous month. The [defendant] must pay the invoice within fourteen (30) calendar days of the date on the invoice. Payment must be sent via electronic payment or check as follows:
>
> > Initial 5k immediate. Balance of 11,000 00 k due net 30 in full by 8/24
> >
> > (Hourly Billable services are usually 175/hr however agreed to fee above for 3 placements)
> >
> > **16k is for warranty of 3 jobs only and will not be held to terms if company terminates and/or** replacement of 12 month guarantee to [the defendant] to backfill **only. Rate is 175/hr for all fees associated to fill position, billed monthly. [The defendant] will be billed for all fees monthly Due net 30.** Any additional staff will be billed at rates comparable and agreed on. @ **175/hr in addendum of charges.**

(Bolding added.) The defendant disputed that the version of the contract she executed contained the bolded language (disputed language). Moreover, she testified that a signature appearing underneath her type-written name on the version of the contract introduced by the plaintiff was not her signature, and that a hand-written address appearing underneath her purported signature was not in her handwriting. The defendant introduced documents containing what she testified was her authentic signature, including a photograph of the signature page of the contract that she testified she had signed and a $5,000 check that she testified she had provided to the plaintiff for her deposit.

2

The plaintiff argued that, pursuant to the disputed language, the defendant owed him $58,635.75 in addition to the $16,000 that she had paid under the disputed provision. In support of his claim, the plaintiff introduced a spreadsheet that he asserted captured the charges for which he was seeking compensation. The plaintiff submitted no other documents into evidence, such as invoices, supporting his claim that he was entitled to $58,635.75 for services and expenses pursuant to the disputed language. The plaintiff did not dispute that he found candidates to fill only two of the three positions identified in the contract, claiming that he did not find a candidate for the third position because the defendant had already breached the contract.

In response, the defendant testified that she had never seen the spreadsheet before trial. The defendant further testified that the plaintiff had never sent her any invoices at all. The defendant argued that, regardless of which version of the contract was authentic, the contract called for her to pay a flat fee of $16,000 for the plaintiff to find candidates to fill the three positions called for in the contract, that she had paid the $16,000, that the plaintiff had found candidates for only two of the three positions, and that the plaintiff had not established that he was entitled to any additional compensation under the disputed language.

In its order on the merits, the trial court determined that, even under the plaintiff's version of the contract, the plaintiff was required to find employment candidates to fill three positions for a flat fee of $16,000, and that the plaintiff had not established that he was entitled to additional compensation under the disputed language. Specifically, the trial court observed that the only evidence corroborating the plaintiff's claim to have performed compensable work under the disputed language was his spreadsheet, that the spreadsheet was only "a summary which reference[d] candidate and client calls, but contain[ed] no specifics as to exactly what work [the plaintiff] performed and when it was performed," and that the plaintiff never invoiced the defendant for any work he claimed he had performed. "Had the Plaintiff believed that the contract entitled him to bill for work performed on an hourly basis," the trial court reasoned, "he certainly would have issued invoices requesting payment from the Defendant." "Having observed the Plaintiff testifying and reviewed all documents submitted into evidence," the trial court determined that the plaintiff's "testimony regarding additional expected payments" was not credible. Accordingly, the trial court ruled in favor of the defendant on the plaintiff's claim, and awarded the defendant $5,333.33, or one-third of the $16,000 she had paid, on her counterclaim, finding the plaintiff in material breach of contract by refusing to find a candidate for the third position.

We note that, on reconsideration, the trial court clarified that it had "considered both versions of the contract," that it did "not find that the [disputed] language . . . carrie[d the plaintiff's] position regarding payment

3

terms that were agreed upon," that it "did not find the Plaintiff's testimony regarding agreed upon payment terms to have been credible," and that it did not "find the Plaintiff's interpretation of the payment terms to be reasonable." In context, we interpret both the trial court's order on the merits and its order on reconsideration, together, to mean that it determined that the disputed language was not in the version of the contract that the defendant had executed, but that, even if it had been in the version that the defendant had executed, the plaintiff had not established his entitlement to compensation under it. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (stating that the interpretation of a trial court order is a question of law, which we review de novo). Upon this record, we conclude that the trial court's findings and conclusions with respect to the plaintiff's breach of contract claim and the defendant's counterclaim were neither lacking in evidentiary support nor tainted by error of law. Syncom Indus., 155 N.H. at 83. The remaining arguments in the plaintiff's brief either are insufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

We next address the defendant's argument on cross-appeal that the trial court erred by denying her motion for attorney's fees. The contract contained the following provision:

Dispute resolution:

1. Choice of Law. The Parties agree that this Agreement shall be governed by the State and/or Country in which the duties of this Agreement are expected to take place. In the event that the duties of this Agreement are to take place in multiple States and/or Countries, this Agreement shall be governed by Maine law.

2. Negotiation. In the event of a dispute, the Parties agree to work towards a resolution through good faith negotiation.

3. Mediation or Binding Arbitration. In the even that a dispute cannot be resolved through good faith negotiation, the Parties agree to submit to binding mediation or arbitration.

4. Attorney's Fees. In the event of Arbitration and/or Mediation, the prevailing party will be entitled to its legal fees, including, but not limited to, its attorneys' fees.

Following the trial court's order on the merits, the defendant filed a motion for attorney's fees under this provision, observing that it was identical

4

in both versions of the contract submitted by the parties, and that, although the plaintiff had filed a small claim complaint rather than submitting the dispute to arbitration or mediation, because she had prevailed on the merits, the defendant was entitled to an award of attorney's fees. In denying the motion, the trial court determined that the fee-shifting provision of the contract is limited to attorney's fees incurred in arbitration or mediation, and not attorney's fees "associated with the litigation of this matter through the Court system." The defendant argues that, because the parties' contract "is clear that in the event of a dispute, the intent was that the prevailing party was to receive an award of reasonable attorneys' fees incurred with the dispute," the trial court erred by limiting the provision to attorneys' fees incurred in an arbitration or mediation. We agree.

We interpret the parties' contract <u>de novo</u>. <u>AZNH Revocable Trust v. Spinnaker Cove Yacht Club Ass'n</u>, 176 N.H. 119, 124 (2023). "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." <u>Id</u>. (quotation omitted).

The clear intent of the parties was to require that they submit any contractual dispute that they could not resolve through good faith negotiation to an alternative dispute resolution process, and to entitle the party prevailing in any adjudicated contract dispute to an award of attorney's fees incurred in the process. Although the provision did not contemplate litigation in court, it was <u>the plaintiff</u> who violated the provision by filing suit rather than submitting the parties' dispute to binding mediation or arbitration. Having breached the requirement to submit the dispute to binding mediation or arbitration, the plaintiff cannot further frustrate the parties' intent by shielding himself from an award of attorney's fees on the basis of his own breach. We conclude that, under the circumstances of this case, the dispute resolution provision entitles the defendant to reimbursement for the attorney's fees she incurred in litigating this contractual dispute. Accordingly, we reverse the trial court's order denying the defendant's motion for an award of attorney's fees, and remand for the trial court to determine and award the defendant the amount of reasonable attorney's fees that she incurred in the trial court proceedings.

In light of this order, the defendant may file a request for an award of attorney's fees incurred in litigating this appeal and cross-appeal. Any such request must be accompanied by an affidavit establishing the reasonableness

5

of the attorney's fees she is seeking and must be filed no later than October 31, 2024.

                              <u>Affirmed in part; reversed in part; and remanded</u>.

MacDonald, C.J., and Bassett, Donovan, and Countway, JJ., concurred.


                    **Timothy A. Gudas,**
                         **Clerk**

6